UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| EMLYN COAL PROCESSING OF MINNESOTA, LLC, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | No. 6:09-CV-128-HAI |
| v. | ) ) ) | MEMORANDUM OPINION AND ORDER |
| XINERGY CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Emlyn Coal Processing of Minnesota, LLC, had some coal for sale, which Defendant Xinergy Corporation agreed to purchase. Emlyn delivered the coal, but Xinergy paid less than the contract price. Emlyn filed suit against Xinergy, bringing several state law claims and a claim for damages under 18 U.S.C. § 1962, which targets Racketeer Influenced Corrupt Organizations, commonly referred to as RICO. Xinergy brought state law counterclaims. The matter is now before the Court on Xinergy's motion dismiss (D.E. 32) some of the state law claims[1] and the RICO claim, and Xinergy's motion for summary judgment (D.E. 31) on the breach of contract claim.

The long and short of it is that Emlyn's claims and Xinergy's counterclaims are dismissed. The only claim over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 is the RICO claim. However, the Court grants Xinergy's motion to dismiss (D.E. 32) with respect to the RICO claim, and it is therefore dismissed with prejudice. Emlyn has pled, but failed to establish, diversity subject matter jurisdiction over the state law claims pursuant to 28

---

[1] In addition to the claim brought under 18 U.S.C. § 1962, Xinergy's motion to dismiss (D.E. 32) also seeks dismissal of Emlyn's claims for negligence, fraud and unjust enrichment.

U.S.C. § 1332, which defect applies to Xinergy's counterclaims in turn. Given the dismissal of the federal claim and the lack of original jurisdiction over the state law claims and counterclaims, the Court declines pursuant to 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over those remaining state law claims and counterclaims, and they are therefore dismissed without prejudice.

## I. Background

On or about July 31, 2008, the parties executed a Purchase and Sales Agreement by which Emlyn would sell to Xinergy 1,000 tons of coal at a price of $110 per ton. The contract specified that the coal would be of a certain quality. Emlyn delivered the coal, but Xinergy paid less than the contract price, claiming that the coal was not of the promised quality. Dissatisfied, Emlyn sued Xinergy on April 17, 2009, alleging that: 1) Xinergy "breached the contract by failing to pay for the coal," ("the breach of contract claim"); 2) Emlyn "relied upon Xinergy to act as an otherwise reasonable corporation would do under the circumstances, but that Xinergy failed to do so" ("the negligence claim"); 3) Xinergy intentionally defrauded Emlyn into delivering the coal "with full knowledge that Xinergy did not intend to pay for the coal in full as required by the contract with Emlyn," and Xinergy was unjustly enriched by its actions and has done this before to other coal sellers ("the fraud and unjust enrichment claims"); and lastly 4) Xinergy engaged in conspiracy and racketeering in violation of 18 U.S.C. § 1962 (RICO), giving rise to a claim for treble damages ("the RICO claim"). (D.E. 18). Xinergy denied those claims, and asserted the following counterclaims: 1) breach of contract; 2) breach of warranty of merchantability; 3) breach of warranty of fitness for a particular purpose; and 4) breach of express warranty. (D.E. 6 at pp. 7-9; D.E. 19 at 3).

## II. The Court Must Grant Xinergy's Motion to Dismiss the RICO Claim

Xinergy argues that Emlyn's RICO claim must be dismissed because "vague and conclusory allegations of fraud, conspiracy and racketeering are not sufficient to state a claim on which relief can be granted." (D.E. 32 at 2). Further, Xinergy argues that "Emlyn has failed to even make an allegation of the criminal activity required . . . to constitute 'racketeering' and has failed to allege as to with whom Xinergy conspired." In response, Emlyn essentially argues that the motion to dismiss should be denied because its pleadings were sufficient to put Xinergy on notice of the claim to be defended.

### A. *Motion to Dismiss Standard*

Upon a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" *id.,* and determine whether the "complaint states a plausible claim for relief[,]" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Under this standard, a plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. A complaint falls short, however, if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 1949-50. Instead, the allegations must "'show that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. The Requirement to Allege a Pattern of Racketeering Activity

RICO makes it unlawful for any person to (a) use money derived from a pattern of racketeering activity to invest in an enterprise, (b) acquire control of an enterprise through a pattern of racketeering activity, (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, or (d) conspire to do any of those things. *See* 18 U.S.C. § 1962(a)-(d). A "pattern of racketeering activity" is defined in § 1961(5) as "at least two acts of racketeering" within a ten-year period. Acts of racketeering, referred to as "predicate acts," are certain specifically enumerated criminal offenses. *See* 18 U.S.C. § 1961(1). "[I]n order to establish a RICO violation, [a plaintiff] must prove the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Wallace v. Midwest Fin. & Mortg. Services, Inc.*, 728 F. Supp. 2d 906, 912 (E.D. Ky. 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

RICO was enacted to "seek the eradication of organized crime in the United States . . . by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub. L. No. 91-452, 84 Stat. 922 (1970). Although RICO is "essentially a criminal statute, [it] provides for civil penalties by private parties who have been injured 'by reason of' a RICO violation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 654-55 (S.D.N.Y. 1996) (quoting 19 U.S.C. § 1964(c)). "A civil RICO action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be *indictable*. Thus, the plaintiff must prove each prong of the predicate offense, or 'racketeering activity,' to maintain a civil action under the RICO statute." *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 183-84 (6th Cir. 1993) (citations omitted). Moreover, a plaintiff must also show that "the racketeering

predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

In Count IV of its amended complaint, Emlyn alleges that Xinergy violated § 1962 "through the acts and omissions described herein," presumably referring to the allegations of breach of contract, negligence, fraud and unjust enrichment, and that Xinergy committed "the same or similar acts and omissions to other companies within the relevant timeframe." (D.E. 18 at 4). More specifically, Emlyn alleges that Xinergy "deliberately deceived Emlyn into delivering the . . . coal . . . with full knowledge that Xinergy did not intend to pay for the coal in full as required by the contract with Emlyn." (*Id.*). Emlyn also alleges that "this particular course of conduct of Xinergy . . . has occurred with respect to other coal sellers." (*Id.*).

## C. *Emlyn Has Failed to Allege a Predicate Act, Much Less a Pattern of Racketeering Activity*

Put simply, where a plaintiff "fail[s] to allege any predicate acts, there can be no pattern of racketeering." *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990). Emlyn alleges that Xinergy committed fraud by not paying fully for the coal delivered. Common law fraud is not one of the predicate offenses enumerated at 18 U.S.C. § 1961(1). Even if it were, Emlyn has failed to plead fraud with sufficient particularity. "Federal Rule of Civil Procedure 9(b)'s requirement that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake' has been applied to allegations of fraud made in support of a RICO claim." *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008) (citing *Blount Financial Services, Inc., v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987)). Thus, "Rule 9(b) has been construed to require a plaintiff to allege, at a minimum, 'the time, place and contents of the misrepresentation(s).'" *Id.* (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). Emlyn's argument that mere notice

pleading suffices in this context must fail in light of this heightened pleading requirement, and Emlyn's complaint therefore falls short.

In addition to fraud, Emlyn alleges breach of contract, but that is not a predicate act either, and courts are wary of litigants seeking to "transmute" such claims into a RICO claim by "simply appending the terms 'false' and 'fraudulent.'" *See Kolar v. Preferred Real Estate Investments, Inc.*, 361 F.App'x 354, 364 (3rd. Cir. 2010); *Annulli v. Panikkar,* 200 F.3d 189, 200 (3d Cir. 1999) ( "[T]heft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity . . . . We will not read language into § 1961 to federalize every state tort, contract, and criminal law action.") (footnotes omitted); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ("[T]his circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims."); *Blount*, 819 F.2d at 152 (dismissing RICO claim in part because "[t]he fact that the parties take different positions under the contract as to the appropriate prime rate [of interest] . . . does not give rise to a valid claim for [mail] fraud.").

In sum, Emlyn's amended complaint is devoid of factual content from which the Court could reasonably infer that Xinergy's conduct constitutes a pattern of racketeering in violation of RICO. That being the case, the RICO claim is dismissed.

### III. Emlyn (and, in turn, Xinergy) Has Failed to Establish that Jurisdiction is Proper Pursuant to 28 U.S.C. § 1332

The Court is duty-bound to ensure that the requirements for subject matter jurisdiction are satisfied in all cases. *See Klepsky v. United Parcel Serv.*, 489 F.3d 264, 268 (6th Cir. 2007) (stating that courts may raise subject matter jurisdiction at any juncture because "'a federal court lacks authority to hear a case without subject matter jurisdiction.'") (citation omitted). Emlyn

alleges that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Xinergy, on the other hand, pled that "Emlyn has failed to plead the citizenship of each party in accordance with 28 U.S.C. § 1331 [sic] such that this Court lacks diversity jurisdiction." (D.E. 19). Because "[a] plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction[,]" the Court must determine whether jurisdiction under § 1332 exists. *Washington v. Sulzer Orthopedics, Inc.*, 76 F. App'x. 644, 645 (6th Cir. 2003) (citing Fed. R. Civ. P. 8).

### A. *Requirements for Jurisdiction Under 28 U.S.C. § 1332*

District courts have original jurisdiction of all civil actions between citizens of different states in which the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). When parties are citizens of different states, they are said to be diverse; a district court's jurisdiction under § 1332 is commonly referred to as diversity jurisdiction. Citizenship, for purposes of § 1332, is determined as of the date the action is commenced, which in this case was April 17, 2009. *See* Fed. R. Civ. P. 3; *Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968); *Charter Tp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 759 (6th Cir. 2002) ("The district court recognized that for purposes of federal court jurisdiction, diversity of citizenship is determined at the time the action is commenced . . .").

The parties agree that Emlyn is a limited liability company. A limited liability company, like a partnership, has the same citizenship as its constituent members. *See, e.g. Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (6th Cir. 2002). If such members are natural persons, their citizenship is their domicile. *Safeco Ins. Co. of America v. City of White House, Tenn.*, 36 F.3d 540, 544 (6th Cir. 1994) (citing *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)). Courts look to various factors in determining an individual's domicile:

> Current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

*Persinger v. Extendicare Health Servs., Inc.*, 539 F. Supp. 2d 995, 997 (S.D. Ohio 2008) (quoting 13B Charles A. Wright, et al., *Federal Practice & Procedure* § 3612 (2d ed. 1984)) (internal brackets omitted).

Furthermore, the parties cannot establish diversity by stipulation. *In re Millers Cove Energy Co., Inc.*, 128 F.3d 449, 450 ("Subject matter jurisdiction cannot be conferred on federal courts by consent of the parties.") (quoting *Ford v. Hamilton Investments, Inc.*, 29 F.3d 255, 257 (6th Cir. 1994)). Instead, the plaintiff must plead those facts which establish the court's jurisdiction. *Washington*, 76 F. App'x. at 645.

### B. Emlyn Has Failed to Establish Jurisdiction Pursuant to 28 U.S.C. § 1332

Emlyn's assertion of jurisdiction under § 1332 ran into trouble early on. District Judge Van Tatenhove, who initially presided over this matter, pointed out that Emlyn, a limited liability company, had failed to properly plead its own citizenship:

> In the Complaint, the Plaintiff, Emlyn Coal Processing of Minnesota, LLC, claims that this Court has subject matter jurisdiction under 28 U.S.C. § 1332, the diversity jurisdiction statute. Specifically, Emlyn Coal Processing states that it is a Minnesota limited liability company doing business in Kentucky. While a corporation is considered a citizen of its state of incorporation and the state where it has its principal place of business, the same is not true of a limited liability company. In *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (6th Cir. 2002), the Sixth Circuit explained that a limited liability company "is not treated as a corporation and has the citizenship of its members. . . ." Therefore, with respect to Emlyn Coal Processing of Minnesota, LLC, the Complaint is insufficient to establish jurisdiction in this Court.

(D.E. 9 at pp. 1-2). Judge Van Tatenhove noted that Emlyn's RICO claim likely established federal question jurisdiction pursuant to 28 U.S.C. § 1331, but that the complaint as written

alleged only diversity jurisdiction. Emlyn was therefore ordered to make a curative filing in order to properly establish the Court's jurisdiction. (D.E. 9 at 2). Emlyn attempted a curative filing on September 21, 2009, but its efforts to establish its citizenship again fell short. Emlyn stated that "[t]he sole member of Emlyn Coal is Bart Montaneri [sic], who is a resident of Minnesota . . ." (D.E. 11). Although Emlyn's filing alleged the *residence* of Bart Montanari, it did not allege his *citizenship*. It therefore failed to sufficiently establish the citizenship of Emlyn Coal Processing of Minnesota, LLC, *see Homfeld II, LLC*, 53 F. App'x at 732, and so Emlyn's citizenship remained in doubt.

On November 30, 2009, the parties consented to the authority of a United States Magistrate Judge for further proceedings, and the case was transferred to Magistrate Judge Wier. (D.E. 23). On May 3, 2010, Judge Wier conducted a status conference in this matter, and noted that: "[p]laintiff has filed a claim under federal law, thus invoking federal question jurisdiction. The Court nevertheless alerted Plaintiff to continuing deficiencies in the citizenship allegations of each party." (D.E. 25). On July 28, 2010, this matter was transferred to the undersigned. (D.E. 26). On November 5, 2010, the Court again notified Emlyn of its need to establish the citizenship of the parties in order to properly invoke the Court's jurisdiction under § 1332:

> The deficiency is, in part, that Plaintiff has failed to establish the citizenship of the alleged sole member of Emlyn coal, Bart Montanari. The citizenship of a natural person for purposes of diversity jurisdiction is equated with his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (citing *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980)). "To establish a domicile of choice a person generally must be physically present at the location and intend to make that place his home for the time at least." *Sadat*, 615 F.2d at 1180. Once an individual has acquired a domicile in this manner, it "is not lost until a new one is acquired." *Von Dunser*, 915 F.2d at 1072 (citing *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968)).

(D.E. 55 at 2). After setting forth the plethora of factors that courts may consider when determining an individual's domicile, the Court continued:

> Although residency is one factor, an allegation of residency alone is insufficient. *Rich & Rich P'ship v. Poetman Records USA*, No. 08-42-ART, 2008 WL 1868028, at *2 (E.D. Ky. Apr. 24, 2008) ("allegations of residency are insufficient to establish citizenship for purposes of diversity jurisdiction."). Thus Plaintiff has not properly identified the citizenship of any member of Emlyn Coal Processing of Minnesota, LLC.

(D.E. 55 at 3). The Court therefore ordered Emlyn to submit an affidavit of counsel which properly alleged the citizenship of the parties. (*Id.*).

A satisfactory affidavit was not forthcoming, and on November 12, 2010, the Court again addressed Emlyn's deficient allegations as to the citizenship of the parties, this time at a status conference. (*See* D.E. 62 at pp. 36-42). The Court clarified that the relevant time period for establishing citizenship for § 1332 purposes is "the time of the filing of the complaint." (*Id.* at 37:11-13). The Court reiterated that "[r]esidency is not the test. Residency is just one component of the test . . . as was made clear by my last order, citizenship is much more than just residency." (*Id.* at 37:15-23). The Court recited the many factors that courts may consider when determining an individual's citizenship, noting that Emlyn's pleadings failed to properly allege any of them. (*Id.* at pp. 39:20-40:10). Although Xinergy had asserted counterclaims based on § 1332 jurisdiction, counsel for Xinergy acknowledged that "what's in the affidavit [D.E. 58] is not enough to test the domicile or . . . an allegation of the domicile of Mr. [Montanari]." (*Id.* at 40:22-25).

At the conclusion of the status conference, the Court reiterated the importance of establishing Emlyn's citizenship by establishing Bart Montanari's citizenship:

> The Court needs to understand what the basis for subject matter jurisdiction is and whether it's proper. . . . Obviously there's a federal question in the case now.

10

> There are some situations in which the loss of one can also mean the loss of the other – in other words, if . . . the Court does not retain [federal question jurisdiction] and never had [diversity jurisdiction], there may be no subject matter jurisdiction.

(*Id.* at 41:13-22). The Court clarified that counsel for Emlyn need not produce "a document that shows that . . . [Mr. Montanari's] domicile was Minnesota – something somebody signed[,]" but nevertheless requested "education by way of an affidavit with respect to all of the factors that can be addressed that are listed in [the Court's previous Order]." (*Id.* at 42:1-8). On November 23, 2010, Emlyn filed an affidavit which stated as follows: Bart Montanari began attending a church in Farragut, Tennessee, in the Summer of 2007; he began working for Emlyn in Kentucky and staying in hotels in Tennessee and Kentucky in the Summer of 2007; he purchased a home in Farragut, Tennessee, in September 2009; he obtained a Tennessee driver's license on or about May 18, 2010; and he registered his vehicles in Tennessee in the Spring of 2009. (D.E. 60). The affidavit set forth no facts demonstrative of citizenship in Minnesota as set forth in Emlyn's amended complaint. (*See* D.E. 18 at 1).[2]

As has been made abundantly clear, allegations of residency are insufficient to establish citizenship for purposes of diversity jurisdiction. "It has long been settled that residence and citizenship were wholly different things . . . and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction." *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905); *Deasy v. Louisville & Jefferson County Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) ("To establish the 'citizenship' required for diversity jurisdiction, Deasy must show more than mere . . . residence. He must show that [the state in question] is his domicile."); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000)

---

[2] Nor would establishing Mr. Montanari's citizenship in Tennessee benefit Emlyn inasmuch as Xinergy is a citizen of Tennessee, thereby preventing complete diversity.

("[A]llegations of residence are insufficient to establish diversity jurisdiction."); *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) ("It is also clear that a statement of the parties' residence is insufficient to establish their citizenship."); *Canning v. Poole*, No. 10-16-JBC, 2011 WL 588045, at *1 (E.D. Ky. Feb. 10, 2011) (order denying motion to dismiss on grounds that federal question jurisdiction was present) ("Since the common use of the word "resident" does not always mean citizen, [the plaintiff's] assertion of residency is not sufficient to support jurisdiction." (citing *Shaw v. Quincy Mining Co.*, 145 U.S. 444, 447 (1892))).

Emlyn has not satisfied the Court's repeated requests for facts demonstrating Montanari's – and therefore Emlyn's – citizenship on the relevant date. Instead, Emlyn's most recent filing shows only increasing ties between Montanari and Tennessee around the time this action commenced on April 17, 2009, including: church attendance in Tennessee beginning in 2007; Montanari's purchase of a home in Farragut, Tennessee, in September 2009; and his obtaining a Tennessee driver's license on or about May 18, 2010. (D.E. 60 at pp. 2-3). Notably, Emlyn states that Montanari "registered his vehicles in Tennessee in the Spring of 2009." (*Id.* at 2). In context, this assertion seems evasive: the Court clearly explained the importance of alleging Montanari's citizenship as of April 17, 2009, and therefore the Court cannot help but find that the vague reference to "Spring 2009" is indicative of an inability to give the Court a specific answer. Emlyn has therefore failed to put forth enough facts to enable the Court to determine its citizenship, leaving jurisdiction under § 1332 still in doubt. That defect applies to Xinergy's counterclaims as well. The remaining question is what to do about this deficiency.

Plaintiffs are typically permitted to remedy "[d]efective allegations of jurisdiction, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *Miller v. Davis*, 507 F.2d 308, 311 (6th

Cir. 1974) ("Amendment to establish jurisdiction is broadly permitted, so as to effectuate Congress' intent in enacting § 1653 – to avoid dismissals on technical grounds."). Emlyn has tendered a second amended complaint, but that does not remedy the previous failure because the tendered complaint offers no firmer jurisdictional footing than its predecessor. (*See* D.E. 54-3) (asserting another breach of contract claim). Where "the infirmities in the original complaint [are] not cured by the allegations in the amended complaint," a court may properly deny a motion to amend. *LRL Properties v. Portage Metro Hous. Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995) (allegations in amended complaint found inadequate to cure deficient pleading of fourteenth amendment due process and equal protection claims); *Jackson v. Heh*, 215 F.3d 1326 (table), 2000 WL 761807, at *9 (6th Cir. June 2, 2000) (motion to amend complaint denied in part because allegations in tendered amended complaint were inadequate to establish § 1332 jurisdiction as to the amount in controversy).

Affidavits can likewise cure defective allegations of citizenship, but the Court has already been down that road, having provided Emlyn with numerous opportunities to correct its deficient allegations of citizenship. Those opportunities were to no avail, however, and at this point ordering yet another curative filing would be futile. As the Seventh Circuit wrote:

> These lawyers knew what they had to do, and they did not do it. Failure in one round of supplemental filings leads us to doubt that a second would be any more successful. Anyway, it is not the court's obligation to lead counsel through a jurisdictional paint-by-numbers scheme. Litigants who call on the resources of a federal court must establish that the tribunal has jurisdiction, and when after multiple opportunities they do not demonstrate that jurisdiction is present, the appropriate response is clear. Counsel have only themselves to blame if they must now litigate this case from scratch in state court.

*Guaranty Nat. Title Co., Inc. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996); *America's Best Inns, Inc. v. Best Inns of Abilene, LP.*, 980 F.2d 1072, 1074 (7th Cir. 1992) (Upon a failure

to establish diversity of citizenship despite "express directions" about how to do so, "[t]he parties' reluctance to supply the court with essential details supports an inference that jurisdiction is absent[.]")

Having found that Emlyn has failed to establish that jurisdiction is proper under § 1332, and that supplemental filings would be futile, the Court may retain jurisdiction over the state law claims and counterclaims only by way of supplemental jurisdiction under 28 U.S.C. § 1367. In this case, as set forth more fully herein, that is a thin reed indeed, and will not be relied upon by the Court.

**IV. The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims**

Since there is no diversity jurisdiction over the state law claims and counterclaims, only supplemental jurisdiction can enable the Court to adjudicate those claims. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966), the U.S. Supreme Court established the doctrine of supplemental jurisdiction as a matter of federal common law. "Essentially, *Gibbs* held that a federal court can decide a state law claim that forms part of the same 'case or controversy' as a claim over which the court has jurisdiction." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The doctrine of supplemental jurisdiction has since been codified at 28 U.S.C. § 1367. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis,* 80 F. App'x 382, 384-85 (6th Cir. 2003)) (internal quotations omitted).

This is not a hard and fast rule, however, and "[d]istrict courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.'" *Pinney Dock &*

*Transp. Co., v. Penn Central Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quoting *Musson*, 89 F.3d at 1254). The Court's decision to exercise that discretion depends on "judicial economy, convenience, fairness and comity." *Musson*, 89 F.3d at 1254 (quoting *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Nevertheless, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 1254-55. Where the federal claim is dismissed under Rule 12(b)(6), as has happened here, "there is a strong presumption in favor of dismissing supplemental claims." *Id*. at 1255.

In this case, the balance of considerations point to dismissing the state law claims rather than retaining supplemental jurisdiction. Judicial economy does not counsel in favor of exercising supplemental jurisdiction. The Court's activities were largely limited to addressing the diversity jurisdiction problem, conducting a few pretrial conferences, and dealing with the flurry of motions practice precipitated by Emlyn's failure to conduct discovery within the timeframe contemplated by the scheduling order. This cuts against retaining supplemental jurisdiction. *See Lee v. Detroit Med. Ctr.*, No. 05-CV-70754-DT, 2006 WL 1522022, at *4 (E.D. Mich. May 30, 2006) ("The court cannot say that it has expended a substantial amount of time or resources . . . to justify departing from the general rule in this circuit which favors remand or dismissal when the federal claims have been dismissed."). The Court does not perceive significant inconvenience or any unfairness arising out of its decision, and the principle of comity supports letting state courts adjudicate state law claims. The Court therefore declines, pursuant to § 1367(c)(3), to exercise supplemental jurisdiction over Emlyn's claims of breach of contract, negligence, fraud, and unjust enrichment, as well as Xinergy's counterclaims of breach

of contract, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and breach of express warranty.

### V. Conclusion

Accordingly, for the reasons stated herein, it is **ORDERED** that:

1. Xinergy's motion to dismiss (D.E. 32) is **GRANTED in part**;

2. Emlyn's claim brought under 18 U.S.C. § 1962 is **DISMISSED with prejudice**;

3. The remaining claims asserted by Emlyn and counterclaims asserted by Xinergy are **DISMISSED without prejudice**;

4. All other pending motions are **DENIED** as moot;

5. This matter shall be stricken from the Court's docket; and

6. A separate judgment shall issue.

This the 19th day of May, 2011.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge